

## OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable H. L. Washburn
County Auditor
Houston, Texas

Dear Sir:

Opinion No. 0-6949
Re: Compensation payable to county tax
assessor and collector for perform-
ing services for the Harris County
Houston Ship Channel Navigation
District.

This is in response to the request contained in your
letter of November 21, 1945, requesting the opinion of this depart-
ment as to the proper statutes under which the Harris County Hous-
ton Ship Channel Navigation District should proceed in making ar-
rangements with the county assessor and collector of Harris County
for the collection of navigation district taxes. Articles 7872 and
7873 (as authorized by Art. 8224), Article 1042b, Vernon's Anno-
tated Civil Statutes, and Chapter 351 of the Acts of the Regular
Session of the 49th Legislature, 1945, are the subjects of contro-
versy. Your exact inquiry concerns the amount of compensation that
may be paid Harris County tax officials for performing services for
the district.

The right of a navigation district to proceed in the man-
ner specified in Articles 7872 and 7873 (collection of taxes for
water control and preservation districts) was authorized by Article
8224. Article 1042b, however, provides in specific terms for the
collection of navigation district taxes by county officials. Since
this statute was passed subsequent to Article 8224, and all amend-
ments, it supersedes the provisions of Articles 7872 and 7873 inso-
far as navigation districts are concerned, to the extent of all con-
flicts.

Article 1042b authorizes navigation districts to agree
with the county commissioners upon the amount of compensation to be
paid the county officials for their services, but contains the limi-
tation that such compensation shall not exceed one per cent of the
taxes so collected. The language is as follows:

Honorable H. L. Washburn, page 2

"When the County Assessor and County Col-
lector are required to assess and collect the
taxes in any incorporated city, town or village,
drainage district, water control and improvement
district, water improvement district, or naviga-
tion district, they shall respectively receive
for such services an amount to be agreed upon by
the governing body of such incorporated cities,
towns or villages, drainage districts, water con-
trol and improvement districts, water improvement
districts, or navigation districts, and the Com-
missioners Court of the county in which such in-
corporated cities, towns or villages, drainage
districts, water control and improvement dis-
tricts, water improvement districts, or naviga-
tion districts are situated not to exceed one per
cent of the taxes so collected."

This limitation is controlling unless Chapter 351
of the Acts of the Regular Session of the 49th Legislature,
1945, is applicable. For the purpose of this opinion, the
pertinent parts of this Act read as follows:

"Section 1. Any incorporated city, town or
village, independent school district, drainage
district, water control and improvement district,
water improvement district, navigation district,
road district, or any other municipality or dis-
trict in the State of Texas, located entirely
within the boundaries of another municipality or
district is hereby empowered, to authorize, by
ordinance or resolution, the Tax Assessor, Board
of Equalization and Tax Collector of the munici-
pality in which it is located to act as Tax As-
sessor, Board of Equalization and Tax Collector
respectively for the municipality or district so
availing itself of the services of said officers
and Board of Equalization.

" . . . .

"Sec. 2. When the Tax Assessor, Board of
Equalization, and Tax Collector of any munici-
pality or district have been authorized by ordi-
nance or resolution to act as and perform the
duties, respectively, of Tax Assessor, Board of

Honorable H. L. Washburn, page 3

Equalization and Tax Collector of another municipality or district included within its boundaries, such included municipality or district shall pay the municipality or district, the services of whose officers and Board of Equalization are being utilized, for said services and for such other incidental expense as are necessarily incurred in connection with the rendering of such services, such an amount as may be agreed upon by the governing bodies of said two municipalities or districts.

"Sec. 3. Whenever any municipality or district shall have authorized the Tax Assessor, Board of Equalization and Tax Collector of another municipality or district to act as its Tax Assessor, Board of Equalization and Tax Collector, respectively, it may thereafter revoke and withdraw said authority by ordinance or proper resolution in the same manner in which such authority was conferred, and thereafter the municipality or district so revoking such authority shall assess, equalize and collect its taxes in the manner in which same were assessed, equalized and collected before said authority was granted.

"....

"Sec. 5. The provisions of this Act shall be cumulative of and in addition to all other rights and remedies to which any such municipalities and districts maybe entitled, but as to any proceedings under this Act, if any part or portion of this Act be in conflict with any part or portion of any law of the State, the terms and provisions of this Act shall govern as to such proceedings.

"...."

Section 1 requires that the navigation district be "located entirely within the boundary of (the other) municipality or district." You have informed us that the boundaries of the Harris County Houston Ship Channel Navigation District are identical with those of Harris County. It is therefore

Honorable H. L. Washburn, page 4

plain that if Harris County is "another municipality or district" within the meaning of Chapter 351, the navigation district may agree with the county regarding the compensation to be paid the assessor and collector for their services.

As stated in 1 McQuillin Municipal Corporations (2nd Edition), Section 136:

" . . . .

"The status or nature of the county has been the subject of some conflict among court decisions, some holding that a county is a municipal corporation, while others hold that, although counties have the general characteristics of municipal corporations, they are not considered such unless made so by constitution or statute and, therefore, fall into the class of bodies politic, called quasi-public or quasi-municipal corporations organized to aid in the proper administration of state affairs with such powers and functions as the law prescribes, and this view is supported by the weight of authority.  ..."

As stated in Brite v. Atascosa County, (Civ. App.) 247 S.W. 878, writ dismissed:

"The Constitution of Texas recognizes counties as municipal corporations along with cities and towns." (See Article 3, §§ 52 and 53; Art. 11, §§ 1, 3, 6, 7, 8 and 9.)

Moreover, the meaning of the term as given in the Constitution is that which should be ascribed to the Legislature. Welch v. State, (Civ. App.) 145 S.W. (2d) 876, writ refused.

You are therefore advised that it is the opinion of this department that Harris County is a "municipality" within the meaning of that phrase employed in Chapter 351 of the Acts of the Regular Session of the 49th Legislature, 1945. Since the Harris County Houston Ship Channel Navigation District lies wholly within the boundaries of the municipality of Harris County, Texas, and is identical with its boundaries, it is the further opinion of this department that the governing body of the navigation district may agree with

the governing body of Harris County as to the amount of compensation to be paid to the county assessor and collector of Harris County for their services performed for the district.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By     Jas. D. Smullen
             Assistant

JD3:db